**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID CRUMBY,** : | |
| : | |
| **Plaintiff** : | |
| : | **CIVIL NO. 3:CV-08-1900** |
| **v.** : | |
| : | **(Judge Caputo)** |
| **WARDEN R. MARTINEZ,** *et al.,* : | |
| : | |
| **Defendants** : | |

**M E M O R A N D U M**

**I.     Introduction**

Plaintiff David Crumby, an inmate formerly housed at the Allenwood United States Penitentiary (USP-Allenwood), in White Deer, Pennsylvania,[1] commenced this pro se action on October 15, 2008, by filing a civil rights complaint pursuant to 28 U.S.C. § 1331.  Mr. Crumby  claims staff failed to properly classify him as a protective custody inmate and failed to separate him from the known threat that white supremacist inmates posed to him.  Specifically, on April 18, 2008, during David Crumby's transfer from USP-Allenwood to another facility, other inmates on the transport bus, members of the Aryan Circle, attempted to kill.  The following Bureau of Prisons (BOP) employees are named as defendants:  USP-Allenwood Warden, R. Martinez; Case Manager Coordinator, Mark Tanner; and Regional

---

[1] Mr. Crumby is currently housed at the Gilmer Federal Correctional Institution (FCI-Gilmer), in Glenville, West Virginia.

Director D. Scott Dodrill. (Doc. 1, Compl.; Doc. 4. Supp. to Compl.) As relief, Mr. Crumby seeks the following: permanent protective custody status; a separation order keeping him away from any member of any white supremacist group; a transfer to a protective custody facility; and monetary damages for the attempts on his life. (Doc. 1.)

On February 12, 2009, Defendants filed a properly supported Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, based in part, on Mr. Crumby's failure to exhaust his administrative remedies and his failure to state a claim for which relief can be granted. (*See* Docs. 20-21 and 23, Defendants' motion, supporting brief with exhibits, and statement of material facts.) On March 17, 2009, Mr. Crumby filed an opposition brief, exhibits and a response to defendants' statement of material facts. (*See* Docs. 25 - 26.) On April 6, 2009, Defendants' filed a reply brief. (*See* Doc. 29.) The motion is now ripe for disposition.

For the reasons that follow, Defendants' Motion for Summary Judgment will be granted.

**II.	Undisputed Facts as Established by the Record**

Mr. Crumby, a white male, arrived at USP-Allenwood on December 27, 2007, as a "close supervision transfer" from FCI-Edgefield. (Doc. 23, Defendants' Statement of Material Facts (DSMF) at ¶ 3 and ¶ 52; Doc. 26-2, Plaintiff's Response to Defendants' Statement of Material Facts (PSMF) at ¶ 3 and ¶ 52.) While at FCI-

Edgefield, Mr. Crumby refused to enter the inmate general population, and was treated as an unverified protective custody case. (DSMF at ¶ 52; PSMF at ¶ 52). Upon his arrival at USP-Allenwood, Mr. Crumby was immediately placed in the institution's Special Housing Unit (SHU). (DSMF at ¶ 54; PSMF at ¶ 54.) Based on Mr. Crumby's security concerns, he remained in the SHU pending an investigation into his request for protective custody. (DSMF at ¶ 56; PSMF at ¶ 56.)

Staff may place an inmate in the SHU for several reasons, including when an inmate seeks SHU placement for his own protection. (DSMF at ¶ 57; PSMF at ¶ 57.) After an inmate requests protective custody, their claim is investigated by the BOP's Special Investigative Staff (SIS). (DSMF at ¶ 58; PSMF at ¶ 58.) The BOP monitors and controls the transfer, temporary release, and community activities of certain inmates who present special needs for management. These inmates are known as Central Inmate Monitoring (CIM) cases, and require a higher level of review prior to any movement outside the instituiton. (DSMF at ¶¶ 60-61; PSMF at ¶¶ 60-61.) Inmates with a verified need for protective custody are designated as CIM cases. Inmates also may be given a CIMs assignment of "separation" from other individuals who are presently housed in federal custody, or who may come into federal custody in the future (as was previously done for Mr. Crumby). (DSMF at ¶¶ 62-63; PSMF at ¶¶ 62-63.) Inmates may also be given a CIMs assignment of separation from an identifiable disruptive group, such as the Aryan Brotherhood. (DSMF at ¶ 64; PSMF at ¶ 64.)

On January 7, 2008, the institution's SIS Department completed a protective custody investigation into Mr. Crumby's allegations, which included a review of his

-3-

Central File, medical, psychological, and disciplinary records, an interview with at least one other inmate, a search of records to locate an inmate alleged by Mr. Crumby to be in BOP custody, and information provided by Mr. Crumby himself. (DSMF at ¶ 65; PSMF at ¶ 65.) Although Mr. Crumby has one or more inmates with whom he can not be housed, none of those inmates, also known as separatees, were housed at USP-Allenwood. (DSMF at ¶ 66; PSMF at ¶ 66.) Even though no identifiable threat could be identified, based on Mr. Crumby's statements, he was designated as an unverified protective custody case and held in the SHU on administrative custody status. (DSMF at ¶¶ 68-69; PSMF at ¶¶ 68-69.) Defendant Tanner advised Mr. Crumby of the SIS investigation findings, his status as an unverified protection case, and informed him that he would remain in the SHU for approximately one year at which time the Unit Team would review his case and make a decision as to whether he could be safely transferred to another facility. (DSMF at ¶ 75; PSMF at ¶ 75.)

In early 2008, the executive staff made a decision to temporarily transfer approximately twenty-eight inmates to another institution due to overcrowding at USP-Allenwood. (DSMF at ¶ 76; PSMF at ¶ 76.) The SIS department generated the list of inmates to be transferred. The Unit Team staff and Case Management Coordinator Tanner reviewed the list to ensure that none of the inmates had any CIMs classification issues which would prevent their transfer. (DSMF at ¶ 77; PSMF at ¶ 77.) Although Mr. Crumby had one or more separatees listed, none of the identified individuals were scheduled to be on the bus with him. (DSMF at ¶ 78; PSMF at ¶ 78.) Likewise, as a temporary transfer to the receiving institution, it was

anticipated that Mr. Crumby would be held in that facility's SHU in administrative detention status, and not placed in that facility's general population. (DSMF at ¶ 80; PSMF at ¶ 80.) Tanner was not involved in the actual physical transport process on April 18, 2008. (DSMF at ¶ 82; PSMF at ¶ 82.)

On April 18, 2008, during transport, one or more inmates removed portions of their restraints during the trip. As a result, the transport bus was diverted to another facility and the inmates were taken off the bus. (DSMF at ¶ 83; PSMF at ¶ 83.) All inmate restraints were checked and full restraints re-applied where necessary, and the inmate were re-loaded onto the bus and a van, with the exception of Mr. Crumby due to his statements to staff that he was concerned for his safety. (DSMF at ¶ 84 and ¶ 86; PSMF at ¶ 84 and ¶ 86.) No inmates were assaulted, including Mr. Crumby, during this incident. (DSMF at ¶ 85; PSMF at ¶ 85.)

Mr. Crumby was then re-designated back to USP-Allenwood. (DSMF at ¶ 86; PSMF at ¶ 86.) Mr. Crumby was returned to USP-Allenwood on May 7, 2008, without incident and placed in the SHU as an unverified protection case. Mr. Crumby was transferred to FCI-Edgefield, South Carolina on November 25, 2008. (DSMF at ¶ 4; PSMF at ¶ 4.)

BOP records reveal that Mr. Crumby filed fifteen administrative remedies from the date of his arrival at USP-Allenwood (December 27, 2007) until the date he filed the present action (October 15, 2008). (DSMF at ¶ 28; PSMF at ¶ 28.) Six of the fifteen administrative remedies did not pertain to any of the allegations in the Complaint. (DSMF at ¶ 29; PSMF at ¶ 29.)

On February 4, 2008, Mr. Crumby filed Administrative Remedy Number (AR No.) 481665-R1 with the BOP Northeastern Regional Office, alleging that staff were not acting on information he related to them and that he wanted to be transferred for his own protection. (DSMF at ¶ 31; PSMF at ¶ 31.) The Northeastern Regional Office rejected the administrative remedy appeal because the issues raised were not sensitive in nature and directed Mr. Crumby to raise the issues complained of at the institutional level. (DSMF at ¶ 32; PSMF at ¶ 32.) On March 20, 2008, Mr. Crumby filed AR No. 486815-F1, stating that he was an informant and former federal witness. As such he sought a transfer to another facility that did not house any white supremacist group members. (DSMF at ¶ 33; PSMF at ¶ 33; Doc. 21-5 at R. 13.)[2] The administrative remedy was denied on April 7, 2008. Mr. Crumby appealed this decision to the BOP Northeast Regional Office, AR No. 486815-R1 on April 28, 2008. The Northeast Regional Office denied the appeal on May 28, 2008. (DSMF at ¶¶ 34-36; PSMF at ¶¶ 34-36.) On June 12, 2008, Mr. Crumby appealed this decision to the BOP Central Office at AR No. 486815-A1. (Doc. 25 at R. 8.) On August 13, 2008, BOP Central Office responded that "[r]eview of the record reveals your contention was verified on June 4, 2008. Staff will continue to take such steps as are necessary to ensure you are appropriately housed." (DSMF at ¶ 38; PSMF at ¶ 38; Doc. 25 at R. 7.)

---

[2] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

On May 14, 2008, Mr. Crumby filed AR No. 496325-R1 with the BOP Regional Office, requesting a transfer for his own protection and questioning his designated custody level. The BOP Regional Office rejected the administrative remedy as the issues raised were not sensitive. Mr. Crumby was advised to first raise his issues at the institutional level. On June 18, 2008, Mr. Crumby filed AR No. 497876-F1, stating that he feared for his safety because of the April 18, 2008 transport episode. As relief, Mr. Crumby sought to be separated from all white supremacy groups. (Doc. 25 at R. 23.) The administrative remedy was denied on July 11, 2008. (*Id*. at R. 22.) On July 21, 2008, Mr. Crumby appealed this decision to the BOP Regional Office at AR No. 497876-R1. The appeal was denied on August 15, 2008. (*Id*. at R. 20.) Mr. Crumby appealed this decision to the BOP Central Office at AR No. 497876-A1 on August 27, 2008. (DSMF at ¶¶ 39-45; PSMF at ¶¶ 39-45; Doc. 25 at R. 15.) On September 3, 2008, the BOP Central Office rejected this administrative remedy appeal because it was not legible. Mr. Crumby was advised to resubmit the appeal within fifteen days of the date of the rejection notice. (Doc. 25 at R. 14.) Mr. Crumby refiled his appeal with the BOP's Central Office on September 23, 2008. Again, it was rejected on September 30, 2008, as illegible. (Doc. 25 at R. 13.) A second time Mr. Crumby was advised to resubmit a legible copy of his administrative remedy appeal within fifteen days of the rejection notice. No further administrative remedies were filed prior to October 15, 2008. (DSMF at ¶¶ 46-49; PSMF at ¶¶ 46-49.) On October 21, 2008, Mr. Crumby attempted a third time to refile his administrative remedy appeal. It was, however, again rejected by the BOP Central Office as illegible. (Doc. 25 at RR. 9-10.)

-7-

## III. Standard of Review

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to nonmoving party. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

## IV. Discussion

*A.     The Prison Litigation Reform Act's Exhaustion Requirement.*

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies. *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002). The exhaustion requirement of the PLRA is one of "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.C. 2378, 2383, 165 L.Ed.2d 368 (2006). This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." (*Id.*) The "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement. (*Id.*) Failure to substantially comply with

procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). Further, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000). The Supreme Court has clearly stated that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007). Finally, the Third Circuit Court of Appeals has stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 Fed. Appx. 991, 993 (3d Cir. 2006)(not precedential).

A prisoner is not required to allege that administrative remedies have been exhausted. *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. (*Id.*) As such, it must be plead and proven by the Defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

*B. The BOP's Administrative Remedy Program.*

The Federal Bureau of Prisons has a four-step administrative process for an inmate to seek review of any aspect of his confinement. The avowed purpose of the program "is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The BOP

Administrative Remedy Program first requires that an inmate initially attempt informal resolution of the matter (BP-8). *See* 28 C.F.R. § 542.13(a). In the event an informal resolution is not reached, he can start the formal administrative process by submitting a written Request for Administrative Remedy (BP-9) to the Warden within 20 calendar days following the date on which the basis for a remedy request occurred. *See* 28 C.F.R. §§ 542.13 - 542.14. If dissatisfied with the Warden's response, the inmate may appeal to the appropriate Regional Director (BP-10). (*Id*. at § 542.15). If the response of the Regional Director is not satisfactory, the inmate may then appeal (by way of a BP-11) to the Central Office of the Federal Bureau of Prisons, which is the final administrative appeal in the Bureau of Prisons. (*Id*.) No administrative remedy appeal is considered to be fully exhausted until reviewed by the BOP's Central Office. (*Id*.)

> *C.  Mr. Crumby's Exhaustion Efforts as to the Claims Raised in the Complaint.*

Mr. Crumby raises two claims in his present action, both relate to his concern for his physical well being due to his belief that his past cooperation with law enforcement has made him a target of all white supremacy groups. On March 20, 2008, a month before the incident on the transport bus, Mr. Crumby initiated AR No. 486815 (doc. 21-5 at R. 13), requesting to be transferred to a facility without any white supremacy groups. Mr. Crumby based his request on an assertion that his Custody Classification score makes his placement at a high security facility (such as USP-Allenwood) inappropriate. (Doc. 21-5 at R. 5.) The BOP denied Mr. Crumby's

appeal at final review. (Doc. 25 at R. 7.) The record supports a finding that Mr. Crumby has properly exhausted his administrative remedies as to his challenge of his custody and housing designations. The same, however, cannot be said as to his second claim.

The second claim raised in the Complaint, centers around the events of April 18, 2008, when he was involuntarily placed on a transport bus with other inmates, who were allegedly members of the Aryan Circle (a white supremacy group) and who attempted to kill on him the trip. On June 11, 2008, Mr. Crumby filed AR No. 497876 requesting that in the future he is not transported with any white supremacy group members in light on the events of the April 18, 2008, that threatened his life. (Doc. 25 at R. 3.) This is the sole administrative remedy that Mr. Crumby filed while at USP-Allenwood regarding the events of the April 2008 transport. Thus it serves as the foundation for any constitutional claims asserted in the Complaint that arise out of the events of April 18, 2008, including Mr. Crumby's failure to protect claim. Unfortunatly for Mr. Crumby, the undisputed record reveals that he failed to complete the BOP's administrative remedy process prior to filing his lawsuit. Although he successfully completed three of the four steps of the BOP's administrative remedy procedure, his appeal to the Central Office, the fourth and final step of the exhaustion process was not completed. Mr. Crumby's final appeal was rejected and returned to him as illegible. The BOP, however, did not terminate the appeal process at that point, rather Mr. Crumby was granted several opportunities to remedy the improper submission. (*See* Doc. 25 at RR. 9 - 13.) As Mr. Crumby points out in his opposition materials, his last attempt to complete the

BOP's administrative remedy process was dispatched to Central Office on or about October 21, 2008. (*See* Doc. 25 at R. 10.) The mailing date of his final appeal underscores his procedural default in this matter as he filed the instant action on October 15, 2008, seven days prior to submitting his appeal to Central Office, and clearly before Central Office could respond to it. Whether Mr. Crumby ever successfully completed the final level of the BOP's administrative remedy procedure with respect to AR No. 497876 is unknown and is of no consequence in this matter. What is known is that the BOP granted Mr. Crumby several allowances to satisfactorily complete the final step in the administrative review process and that he did not do so prior to initiating this action. Thus, defendants are entitled to summary judgment on any claims based upon AR No. 497876, including his alleged failure to protect claim stemming from the April 18, 2008, incident.[3]

### D. Failure to State a Claim.

To the extent Mr. Crumby seeks to challenge the BOP officials determination of his custody or housing classification, the Court agrees with Defendants that he fails to a cognizable constitutional claim. It is well-established law that inmates have

---

[3] In his opposition materials, Mr. Crumby points out that he raised the issue of defendants' alleged failure to protect him from assault on April 18, 2008, in connection with AR No. 486815. (*See* Doc. 25 at R. 3.) This argument, however, is unavailing as the first time he raises the issue of the April 2008 transport is in his appeal to Central Office. (*Id*. at R. 8.) As defendants point out, this issue was not, and could not, have been presented in his initial request for administrative remedy as it was filed on March 20, 2008, almost a month prior to the April transport incident. Thus, this issue was not properly raised within the confines of AR No. 486815, and is therefore, procedurally defaulted.

neither a protectable property or liberty interest in being housed in a particular facility or classified in an particular security status. *Wilkinson v. Austin*, 545 U.S. 209, 221-22, 125 S.Ct. 2384, 2393, 162. L.Ed.2d 174 (2005)(citing *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538-39, 49 L.Ed.2d 451 (1976)). "It is well established that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002). An inmate does not have a due process right to remain in or be transferred to any particular prison. *See Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Furthermore, prison officials have full discretion to control an inmate's conditions of confinement, including a prisoner's classification. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976). Here, Mr. Crumby disagrees with his placement at USP-Allenwood as well as his classification as an unverified security case. The Court agrees with Defendants' reasoning that these allegations do not rise to the level of a cognizable constitutional claim.

## V.     Conclusion

Having concluded that any claims arising out of Mr. Crumby's April 18, 2008, transport are procedurally defaulted without excuse, and that Mr. Crumby's challenge to his classification and housing assignment do not state a valid constitutional claim, the Court does not need to reach the remaining issues advanced by Defendants in their Motion to Dismiss, or in the Alternative, Motion for

Summary Judgment, as no viable claims remain.

An appropriate Order follows.

                                                **/s/ A. Richard Caputo**
                                                **A. RICHARD CAPUTO**
                                                **United States District Judge**

**Date: September 2, 2009**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID CRUMBY, | : |
| Plaintiff | : |
| | : CIVIL NO. 3:CV-08-1900 |
| v. | : |
| | : (Judge Caputo) |
| WARDEN R. MARTINEZ, *et al.*, | : |
| Defendants | : |

# O R D E R

**AND NOW, this  2nd  day of September, 2009**, for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 20) is **GRANTED**.

2. The Clerk of Court is directed to enter judgment in favor of the defendants and against the plaintiff.

3. The Clerk of Court is directed to close this case.

4. An appeal from this order is deemed frivolous and not in good faith.  See 28 U.S.C. § 1915(a)(3).

                                                   /s/ A. Richard Caputo
                                                   **A. RICHARD CAPUTO**
                                                   **United States District Judge**